Urs Broderick Furrer, Esq.
Harriton & Furrer, LLP
84 Business Park Drive, Suite 302
Armonk, New York 10504
(914) 730-3400
Attorneys for Plaintiffs Lehigh Gas Corporation,
Lehigh Gas-Ohio, LLC and MALG-UST II, LLC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEHIGH GAS CORPORATION,<br>LEHIGH GAS-OHIO, LLC and<br>MALG-UST II, LLC,<br><br>       Plaintiffs,<br><br>       v.<br><br>JASPER FUELS, INC.,<br>RALLY MOTOR SPORTS, INC. and<br>BRUCE HOFFNER,<br><br>       Defendants. | Civil Action No.: |

***THE PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF THEIR MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE
RELIEF AND A TERMPORARY RESTAINING ORDER***

***URS BRODERICK FURRER, ESQ.***
***HARRITON & FURRER, LLP***
Attorneys for Plaintiffs Lehigh Gas Corporation,
Lehigh Gas-Ohio, LLC and MALG-UST II, LLC
84 Business Park Drive, Suite 302
Armonk, New York 10504
(914) 730-3400
BBO # 681287

### ***TABLE OF CONTENTS***

**TABLE OF AUTHORITIES**........................................................................................................................ ii

**PRELIMINARY STATEMENT** ...............................................................................................................1

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**........................................................1

**ARGUMENT** ...............................................................................................................................................4

    *I.*    *Plaintiffs Are Entitled to a Preliminary Injunction.* .................................................................5

        A.    Plaintiffs Are Likely To Succeed on The Merits.........................................................5

        B.    Plaintiffs Will Suffer Irreparable Harm.......................................................................8

        C.    The Balance of the Equities Is In Plaintiffs' Favor. ................................................10

        D.    Plaintiffs' Application Supports the Public Interest................................................10

    *II.*    *Plaintiffs Are Entitled to a Permanent Injunction*................................................................11

    *III.*    *Plaintiffs Are Entitled to a Temporary Restraining Order*................................................12

**CONCLUSION**.........................................................................................................................................13

# *TABLE OF AUTHORITIES*

Cases

Baseball Pub. Co. v. Bruton, 302 Mass. 54, 18 N.E.2d 362 (1938)............................................................5

Chevron Puerto Rico, LLC v. Perez-Rosado, 673 F. Supp. 2d 69 (D.C. P.R. 2009)................................11

Gray v. Handy, 349 Mass. 438, 442, 208 N.E.2d 829 (1965)..................................................................5

Hodgkins v. Farrington, 150 Mass. 19, 21, 22 N.E. 73, 74 (1889)..........................................................5

Nelson v. American Telephone & Telegraph Co., 270 Mass. 471, 170 N.E. 416 (1930)............................5

Quincy Cablesystems, Inc. v. Sully's Bar, Inc., 640 F. Supp. 1159, 1160 (D. Mass. 1986)......................12

Spodek v. U.S. Postal Serv., 35 F. Supp. 2d 160 (D. Mass. 1999)...........................................................11

turnick v. Watson, 336 Mass. 139, 142, 142 N.E.2d 896 (1957)..............................................................5

Univ. of Texas v. Camenisch, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981).........11

Util. Contractors Ass'n of New England, Inc. v. City of Worcester, 236 F. Supp. 2d 113, 116 (D. Mass. 2002)
.....................................................................................................................................................5, 10

Rules

Fed. R. Civ. P. 65(a)(1).....................................................................................................5, 11, 12

Treatises

Restatement, Property, § 519(1)..........................................................................................................5

Regulations

M.G.L.A. 21O, §8.................................................................................................................................9

Massachusetts Board of Fire Prevention Regulation 527 CMR 9.07(J)...........................................4, 9, 10

## *PRELIMINARY STATEMENT*

This Memorandum of Law is respectfully submitted in support of the Plaintiffs' application for an Order preliminarily and permanently granting Plaintiffs exclusive possession of the property located at 1264 Grafton Street, Worcester, Massachusetts ("the Premises") and, at the very least, enjoining the Defendants, their agents, servants, employees, representatives and assigns, and all persons acting in concert or participation with them, from positioning cars on the Premises or engaging in any other conduct so as to prevent the Plaintiffs' access to the Premises including the underground storage tanks ("USTs") and directing them to immediately move the cars currently blocking access to the Premises and, specifically, the USTs.

## *PROCEDURAL HISTORY AND FACTUAL BACKGROUND*

The procedural history and factual background of this matter are set forth more fully in the accompanying Affidavit in Support of Joel Despres ("Despres Affidavit").   However, the following provides an overview of the parties involved in this matter, their relationships and the heart of the controversy.

Getty Properties Corporation ("Getty") is the owner, through one of its affiliate entities, of the Premises which has been operated for some period of time as a retail gasoline service station. Through a series of transactions, Green Valley Oil, LLC ("Green Valley") acquired the right to occupy the Premises and entered into several agreements with Suleyman Corporation ("Suleyman") (collectively referred to as the "Green Valley Lease and Supply Agreements") wherein Suleyman agreed to lease the Premises and Green Valley agreed to supply Suleyman with petroleum product to offer for sale at the service station on a commission basis.   Suleyman later assigned its rights and obligations under those agreements to Defendant Jasper Fuels, Inc. ("Jasper").

As a result of certain bankruptcy proceedings, the Green Valley Lease and Supply Agreements were essentially voided.   Nevertheless, Getty, as the owner of the property, offered

1

Jasper the opportunity to remain in possession of the Premises and continue to operate it as a service station through a temporary, revocable license agreement ("Revocable License Agreement") while Getty attempted to negotiate a long-term lease agreement for the Premises with Lehigh Gas Corporation ("Lehigh Gas") or one of its affiliated entities.   Indeed, pursuant to the terms of the Revocable License Agreement, Jasper was permitted to remain in possession of the Premises and operate it as a service station while Lehigh Gas became the exclusive supplier of petroleum product at the Premises.   However, the Revocable License Agreement made it clear that it was a temporary, revocable agreement and that, to the extent Getty was able to negotiate a long-term lease agreement with Lehigh Gas, it was entirely within Lehigh Gas' discretion as to whether it would then enter into a sub-lease and supply agreement with Jasper. Jasper accepted the terms of the Revocable License Agreement.

In conjunction with the Revocable License Agreement, Lehigh Gas advised Jasper that it would agree to supply petroleum product to the Premises on the same terms and conditions as were contained in Jasper's supply agreement with Green Valley under which Jasper was a commission dealer.[1]   Jasper agreed to the terms of that letter agreement ("April 16, 2012 Letter Agreement") which was extended from time to time while Lehigh Gas continued to negotiate a long-term lease agreement with Getty.

Ultimately, through another series of transactions, Lehigh Gas-Ohio, LLC ("Lehigh Gas-Ohio"), an affiliate of Lehigh Gas, secured the rights to occupy the Premises under a long-term lease agreement.   An affiliated entity, MALG-UST II, LLC ("MALG-UST"), took

---

[1]  A traditional service station dealer buys product directly from the distributor and then sells it directly to the consumer at a price set by the dealer.   Accordingly, once the product is delivered to the station, it becomes the property of the dealer assuming the dealer has paid for it.   The dealer's profit is the difference between what it pays the distributor for the product and what the dealer sells it for to the consumer.   A commission dealer does not buy product directly from the distributor.   Rather, the distributor delivers product to the dealer's station but the dealer never takes ownership of the product.   Instead, the dealer earns a negotiated commission on the product that is sold at its station.   Accordingly, any product delivered to the station that is not sold remains the property of the distributor.

ownership of the underground petroleum storage system at the Premises including the USTs. Lehigh Gas-Ohio also assumed the rights and obligations of Getty under the Revocable License Agreement.

Lehigh Gas-Ohio then attempted to negotiate a lease and supply agreement for the Premises with Jasper and, while the parties were in negotiations, Lehigh Gas continued to supply petroleum product to the Premises pursuant to the April 16, 2012 Letter Agreement. Ultimately, Jasper was offered a franchise agreement for the Premises pursuant to the Petroleum Marketing and Practices Act ("PMPA"). However, Jasper declined that opportunity. Shortly after being provided with the proposed PMPA Franchise Agreement, Jasper took certain steps in an effort to avoid its obligations to Lease Gas-Ohio under the Revocable License Agreement and to Lehigh Gas under the April 16, 2012 Letter Agreement.

More specifically, beginning in early June 2013, Jasper started becoming delinquent in its financial obligations to Lehigh Gas and Lehigh Gas-Ohio leaving Lehigh Gas no option other than to suspend deliveries of product to the station as it was permitted to do under the relevant agreements. In response thereto, cars were parked on the Premises by the Defendants in a way that blocked access to the Premises and, specifically, the USTs, presumably in an attempt to prevent Lehigh Gas from removing its product from the tanks. It must be noted that the sole director and officer of Defendant Jasper, Defendant Bruce Hoffner ("Hoffner"), operates a used automobile sales company, Defendant Rally Motorsports, Inc. ("Rally"), on a property adjoining the Premises and it is believed that the cars parked on the Premises that are blocking access thereto including the USTs are owned by Defendants Rally and Hoffner.

Shortly thereafter, Lehigh Gas' Territory Manager, Joel Despres, observed Defendant Jasper selling product at the Premises to retail customers for cash only in violation of the Revocable License Agreement, April 16, 2012 Letter Agreement and the agreements incorporated therein which required Jasper to offer credit card sales to customers. It is believed

3

that Defendant Jasper did so in an effort to conceal sales from Lehigh Gas.   Indeed, the only way that Lehigh Gas had direct access to monies paid for gasoline at the Premises was through credit card purchases.   Accordingly, by making cash only sales, Jasper blocked Lehigh Gas' access to its sale proceeds.   As a result, Lehigh Gas had no choice but to lock the UST fill caps and turn off the dispensers.   Accordingly, the station has not been operating since approximately the end of June 2013.

In light of the foregoing including Lehigh Gas-Ohio's inability to negotiate a long-term lease and supply agreement with Jasper for the Premises on terms and conditions acceptable to both parties, Jasper was advised on or about July 17, 2013 that the Revocable License Agreement would terminate and he would be required to surrender possession of the Premises by August 17, 2013.   That day came and passed and Jasper did not vacate the premises.   The termination was renewed again by letter dated September 30, 2013.   To date, Defendant Jasper has failed to vacate the Premises and, importantly, has refused to remove the cars from the Premises that are blocking Lehigh Gas' access to the USTs and its product.

Importantly, the Defendants' conduct has prevented the Plaintiffs from pumping out all product from the USTs as required by Massachusetts Board of Fire Prevention Regulation 527 CMR 9.07(J) for tanks that are temporarily out of service and may result in Plaintiffs being required to either remove or abandon the tanks in place.   Accordingly, Lehigh Gas, Lehigh Gas-Ohio and MALG-UST II initiated the within action seeking declaratory judgment and preliminary and permanent injunctive relief including a temporary restraining order as well as monetary damages for breach of contract conversion and trespass and a warrant for eviction as a result of the Defendants Jasper, Rally and Hoffner's wrongful conduct.

### ***ARGUMENT***

It is respectfully submitted that this Honorable Court should issue an Order: (1) granting immediate and exclusive possession of the Premises to the Plaintiffs; and (2) preliminarily and

4

permanently enjoining the Defendants, their agents, servants, employees, representatives and

assigns, and all persons acting in concert or participation with them, from blocking Plaintiffs' access

to the Premises and, specifically, the USTs pending the resolution of this matter and directing them

to immediately move the cars currently blocking access; and (3) granting a temporary restraining

order containing the same relief pending a full hearing on this matter.

**I.       Plaintiffs Are Entitled to a Preliminary Injunction.**

"The court may issue a preliminary injunction only on notice to the adverse party."   Fed.

R. Civ. P. 65(a)(1).   As this Court has ruled:

> "To prevail on a motion for a preliminary injunction, the plaintiffs must satisfy the
> Court (1) that they are likely to succeed on the merits of their claims; (2) that
> irreparable harm will follow absent entry of an injunction; (3) that the benefits
> flowing from the injunctions will, on balance, outweigh the burdens imposed; and
> (4) that the injunction comports with the public interest. The showing of a strong
> likelihood of success on the merits, if made, is a point in the plaintiffs' favor in the
> balancing of interests."   Util. Contractors Ass'n of New England, Inc. v. City of
> Worcester, 236 F. Supp. 2d 113, 116 (D. Mass. 2002) (internal citations omitted).

**A.       Plaintiffs Are Likely To Succeed on The Merits.**

The evidence is overwhelming that the Plaintiffs will likely succeed on the merits of their

action.

Pursuant to Massachusetts law, a license is generally revocable at the will of the owner of

the property on which it is exercised. Hodgkins v. Farrington, 150 Mass. 19, 21, 22 N.E. 73, 74

(1889); Nelson v. American Telephone & Telegraph Co., 270 Mass. 471, 480, 170 N.E. 416, 419

(1930); Sturnick v. Watson, 336 Mass. 139, 142, 142 N.E.2d 896 (1957); Gray v. Handy, 349

Mass. 438, 442, 208 N.E.2d 829 (1965). See also Restatement, Property, § 519(1).   Moreover,

subject to licensee's right to be on another's land for a reasonable time after the revocation of the

license for the purpose of removing his chattels, it is of the essence of a license that it is revocable

at will of possessor of land.   Baseball Pub. Co. v. Bruton, 302 Mass. 54, 18 N.E.2d 362 (1938).

Indeed, as discussed in detail in the Despres Affidavit, the Revocable License Agreement,

which was assigned to Lehigh Gas-Ohio, specifically provided that, if Jasper failed to pay the monthly license fee when due or otherwise defaulted in the performance of the terms and conditions of the agreement, it would be deemed to have rejected the terms of the Revocable License Agreement and would be required to vacate the Premises immediately.   Clearly, pursuant to the applicable law as well as the terms of the Revocable License Agreement itself, Lehigh Gas-Ohio was authorized to terminate the agreement at any time without cause.

Nevertheless, it is clear that Lehigh Gas-Ohio had cause to terminate as Jasper was in violation of the terms of the Revocable License Agreement itself as well as the April 16, 2012 Letter Agreement which specifically incorporated the Green Valley Lease and Supply Agreements.   Indeed, Jasper breached the relevant agreements in numerous ways.

At the outset, Defendant Jasper's action in failing to pay money owed to Plaintiffs constitutes a material breach of one or more provisions of the Revocable License Agreement, April 16, 2012 letter agreement and agreements incorporated therein.   More specifically, pursuant to the Revocable License Agreement, Defendant Jasper agreed that all motor fuel delivered to the Premises by Lehigh Gas during the terms of the Revocable License Agreement would be and remain the property of Lehigh Gas until sold to retail customers at which time all proceeds therefrom would be and remain the property of Lehigh Gas, and until remitted to or drafted by Lehigh Gas, would be held by Defendant Jasper in trust for the benefit of Lehigh Gas.   The Revocable License Agreement also made Defendant Jasper responsible for paying any overdue payment as well as a five percent (5%) late charge on the overdue amount if an electronic funds transfer was not honored by its bank for any reason.

However, not only did Jasper fail to remit payments due to Lehigh Gas and Lehigh Gas-Ohio, after Lehigh Gas put deliveries to the station on hold, Defendant Jasper started selling the product that was left in the tanks on a cash only basis purportedly in an effort to conceal those sales from Lehigh Gas and block Lehigh Gas' only direct access to the proceeds from the sale of its

6

product.   Doing so was in breach of the Credit Card and Equipment Lease Agreement which was part of the Green Valley Lease and Supply Agreement that Jasper assumed and was incorporated into the Revocable License Agreement and April 16, 2012 Letter Agreement.   More specifically, pursuant to Paragraph 1 of the Credit Card and Equipment Lease Agreement, the dealer agreed:

> "to accept, only in connection with the normal and customary operation of the Petroleum Business at the [Premises] Discover, American Express, Visa, MasterCard Bank Cards, 'Getty' Business and Fleet Cards and Wright Express fleet card and any other cards that are accepted by Getty and tendered by customers, in accordance with procedures for the sale of such items as are authorized by Getty. Getty reserves the right to add or delete any cards at any time."

Pursuant to the Revocable License Agreement, Jasper agreed that if it failed to pay the monthly license fee when due or otherwise defaulted, it would be deemed to have rejected the terms of this Revocable License Agreement and would vacate the Premises immediately.   Based upon the foregoing, Lehigh Gas-Ohio duly, properly and validly terminated the Revocable License Agreement and demanded that Defendant Jasper quit and surrender said Premises.   Accordingly, it is respectfully submitted that the Plaintiffs will be entitled to a declaratory judgment finding that the Revocable License Agreement was validly and properly terminated and the Plaintiffs are entitled to warrant for eviction.

However, notwithstanding the valid termination of the Revocable License Agreement, Defendant Jasper has held over beyond the termination of the Revocable License Agreement and has refused to vacate and continues to unlawfully occupy the Premises and block Plaintiffs' access to the Premises and, specifically, the USTs.   Doing so is a clear breach of the Revocable License Agreement which provided that, upon termination, Jasper would vacate the Premises immediately and constitutes trespass.

In addition, and as set forth in detail in the accompanying Despres Affidavit, as a commission agent, the product in the USTs is the property of Lehigh Gas, not Defendant Jasper.   Accordingly, the Defendants' conduct in blocking Lehigh Gas' access to the Premises and the USTs constitutes

conversion and trespass.   Indeed, it must be noted that the Green Valley Lease and Supply Agreements specifically contained an acknowledgment from the dealer that, "In the event that I am in default under my [Green Valley Lease and Supply Agreements], Getty shall have right, at any time, without prior notice, to lock the pumps on the premises and the right to remove its motor fuels from the underground gasoline storage tanks."   Jasper is clearly in breach of that portion of the Green Valley Lease and Supply Agreements which were assumed by Jasper and incorporated into the Revocable License Agreement assigned to Lehigh Gas-Ohio and April 16, 2012 Letter Agreement entered into by and between Jasper and Lehigh Gas.   Accordingly, it is respectfully submitted that the Plaintiffs will likely prevail on their claim for a permanent injunction seeking access to the Premises and the USTs.

Simply stated, it is respectfully submitted that it is likely that the Plaintiffs will prevail on the merits of all of their claims.   Indeed, even to the extent that there may be factual issues relating to some of the Plaintiffs' causes of action for breach of contract, the fact remains that, pursuant to applicable law as well as the terms of the Revocable License Agreement itself, termination was proper even without cause.   Accordingly, there should be no dispute that Plaintiffs will, at the very least, be entitled to immediate possession of the Premises including the USTs and product contained therein.

### B.    Plaintiffs Will Suffer Irreparable Harm.

It is respectfully submitted that, if Plaintiffs are not granted immediate exclusive possession and, at the very least, access to the Premises and their USTs, they will suffer irreparable harm as the Defendants' actions in parking cars in such a position to prevent and continue to prevent Plaintiffs from accessing the tanks to remove product from the tanks and render them inert and are prohibiting the Plaintiffs from complying with applicable environmental regulations.

More specifically, Massachusetts Board of Fire Prevention Regulation, 527 CMR

8

9.07(J)(3), provides, in pertinent part, that:

> "The owner of every underground storage tank licensed under M.O.L. c. 148, which the where the owner of an underground storage tank has decided to take out of service the tank for a period of less than six months, shall promptly notify the Head of the Fire Department of the decision, shall have all product removed from the tank and disposed of in accordance with 310 CMR 30.00: *Hazardous Waste*, as directed by the Head of the Fire Department, and shall have all openings properly secured and the tank rendered inert.  During any period a tank is temporarily out of service the owner must continue operation and maintenance of corrosion protection in accordance with 527 CMR 9.05(E)(2).  Before any such tank may be restored to service, the owner of the tank shall notify the Head of the Fire Department, who may require that the owner have the tank and its piping tested, at the owner's expense, in accordance with the provisions of 527 CMR 9.05(F)."

Without access to the USTs, the Plaintiffs cannot remove the product in the tanks or render them inert and can be subject to penalties for failing to comply with 527 CMR 9.07(J)(3).

As stated in M.G.L.A. 21O, §8:

> "No person shall violate, or allow or suffer any employee, agent, or contractor to violate, any provision of this chapter, or of any regulation, rule, order, permit or approval adopted or issued pursuant to this chapter. Any violation of any provision of this chapter, or of any regulation, rule, order, permit or approval adopted or issued pursuant to this chapter shall be presumed to constitute irreparable harm to public health, safety and welfare, and to the environment. Such presumption may be rebutted by the introduction of competent evidence. Any person who violates any provisions of this chapter, or any regulation, rule, order, permit or approval issued or adopted under the provisions of this chapter, (a) shall be punished by a fine not to exceed twenty-five thousand dollars, or by imprisonment for not more than two years, or both; or (b) shall be subject to a civil penalty not to exceed twenty-five thousand dollars for each such violation. Each day each such violation occurs or continues shall be deemed a separate offense. This shall be in addition to any other penalty or remedy prescribed by law.
>
> "The superior court department of the trial court shall have jurisdiction to assess civil penalties as set forth in this section, and to enjoin violations of, and grant such additional relief as it deems necessary or appropriate to secure compliance with, the provisions of this chapter, or any regulation, rule, order, permit or approval adopted or issued pursuant to this chapter, upon petition of the attorney general, a district attorney, the department, the head of the fire department, or a city or town."

Since the Plaintiffs may be subject to civil and criminal penalties for their failure to comply with 527 CMR 9.07(J)(3), it is respectfully submitted they will be irreparably harmed if they are not

granted immediate access to the tanks.   Moreover, at this juncture, the tanks have been out of service since June 20, 2013, almost five (5) months.   To the extent that the USTs are out of service for more than six (6) months, the Plaintiffs are required to either remove the tanks or abandon them in place.   527 CMR 9.07(J)(1) and (2).   Accordingly, if the Plaintiffs are not permitted to access the Premises and reactivate the tanks prior to December 20, 2013, they may lose the right to operate the tanks at the site and will suffer irreparable harm in that regard as well.

**C.     The Balance of the Equities Is In Plaintiffs' Favor.**

As stated above, "The showing of a strong likelihood of success on the merits, if made, is a point in the plaintiffs' favor in the balancing of interests."   Util. Contractors Ass'n of New England, Inc., 236 F. Supp. 2d at 116.   It is respectfully submitted that, as detailed above, the Plaintiffs have demonstrated a strong likelihood of success on the merits.

Moreover, the balance of the equities is in favor of the Plaintiffs because, as detailed in the accompanying Despres Affidavit, the Plaintiffs have acted in good faith and with professionalism at all times in connection with their dealings with the Defendants.   However, the Defendants have acted in bad faith, in contravention of the legal rights of the parties and with no legitimate justification for their actions.   In addition, the Plaintiffs will not be harmed by the preliminary injunction because it will simply maintain the status quo while this action is pending.

Indeed, even a cursory review of Plaintiffs' claims makes it clear that there can be no allegation of "overriding harm to other interested persons," since the Defendants have unlawfully stopped pumping product, prevented tanker truck access to the site and illegally held over at the property.   Defendants have no legal interest in the property and, thus, there can be no overriding harm alleged if the relief sought is granted.

**D.     Plaintiffs' Application Supports the Public Interest.**

Since all the Plaintiffs seek to do is regain access to the Premises and their tanks so they can comply with the applicable environmental regulations which includes the necessary

10

maintenance of the tanks and removal of product while they sit idle to prevent a discharge that may constitute a hazard, there can be no argument that the a preliminary injunction would do anything other than support, promote and benefit the public interest.

## II.     Plaintiffs Are Entitled to a Permanent Injunction.

Since the applicable state law as well as the terms of the Revocable License Agreement itself allowed for the immediate termination of the agreement without cause, the termination of the Revocable License Agreement was valid as a matter of law.   More specifically, Lehigh Gas-Ohio has the rightful grant of authority to lease out the service station which is the subject of this action pursuant to a series of commercial transactions.   Defendant Jasper's only claim to occupancy of the service station premises was based upon the Revocable License Agreement with Lehigh Gas-Ohio.   However, since Lehigh Gas-Ohio has demonstrated that the Revocable License Agreement has been legally terminated, Lehigh Gas-Ohio is entitled to undisputed possession of the Premises.   Tenants at sufferance are disfavored.   Indeed, under Massachusetts law, a tenant at sufferance has no estate nor title, but only a naked possession, without right. Spodek v. U.S. Postal Serv., 35 F. Supp. 2d 160 (D. Mass. 1999).

F.R.C.P. Rule 65(a)(2) specifically provides for an advancement and consolidation of the trial on the merits with the hearing on the preliminary injunction which is appropriate provided all parties have knowledge of the consolidation.   Univ. of Texas v. Camenisch, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981).   As the Court held in Chevron Puerto Rico, LLC v. Perez-Rosado:

> "In light of the termination of the Lease, Defendants were no longer entitled to utilize the Station, and were therefore required to turn over control to Plaintiff. Plaintiff's evidence indicates that Defendants have not surrendered the Station as required. Under such circumstances, an injunction ordering dispossession is an appropriate remedy."   673 F. Supp. 2d 69 (D.C. P.R. 2009).

On the basis of the foregoing, the Plaintiffs respectfully request that this Honorable Court issue a permanent injunction granting Plaintiffs immediate and exclusive possession of the

11

Premises and, specifically, immediate access and control over their USTs.

**III.    Plaintiffs Are Entitled to a Temporary Restraining Order.**

The Plaintiffs are also entitled to a temporary restraining order pending the resolution of this application.

"The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."[2]   Fed. R. Civ. P. 65(b)(1).

As this Court has previously ruled:

"The standard used by a district court considering a request for a temporary restraining order is the same standard used for determining whether to issue a preliminary injunction. To be entitled to a temporary restraining order, the plaintiffs must satisfy four criteria: 1) the plaintiffs must exhibit a likelihood of success on the merits; 2) the plaintiffs must show that they will suffer irreparable injury if the injunction is not granted; 3) the plaintiffs must show that such injury to them outweighs any harm which granting injunctive relief would inflict on the defendants; and 4) the plaintiffs must show that the public interest will not be adversely affected by the granting of injunctive relief."   Quincy Cablesystems, Inc. v. Sully's Bar, Inc., 640 F. Supp. 1159, 1160 (D. Mass. 1986) (internal citations omitted).

Accordingly, for all of the reasons discussed above, it is respectfully submitted that the Plaintiffs are entitled a temporary restraining order pending the full resolution of this application. Indeed, a temporary restraining order is particularly necessary in this matter because, not only are the Plaintiffs subject to criminal and civil penalties every day that the Plaintiffs are without access to their USTs, but, every day that the Plaintiffs do not have access to their tanks to conduct the appropriate maintenance and monitoring of the tanks puts the environment and the general public

---

[2] Notice was not given to the Defendants and notice should not be required in this case with respect to Plaintiffs' request for a temporary restraining order for fear of additional damage being done to the Premises while the Court rules on that application.

at risk for a hazardous spill which, without physical access to the Premises and the tanks, Plaintiffs and the applicable governmental and regulatory authorities would not be able to appropriately respond to.

### ***CONCLUSION***

Based upon all of the foregoing as well as the accompanying Affidavit of Joel Despres, it is respectfully submitted that this Honorable Court should grant Lehigh the relief requested herein and So Order the proposed Order to Show Cause submitted herewith.

Dated:   Armonk, New York
   November 8, 2013

              Yours, etc.

              /s/ Urs Broderick Furrer_____
              ***URS BRODERICK FURRER, ESQ.***
              ***HARRITON & FURRER, LLP***
              Attorneys for Plaintiffs Lehigh Gas
              Corporation, Lehigh Gas-Ohio, LLC and
              MALG-UST II, LLC
              84 Business Park Drive, Suite 302
              Armonk, New York 10504
              (914) 730-3400
              BBO # 681287