# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LEHIGH GAS CORPORATION, <br> LEHIGH GAS-OHIO, LLC and <br> MALG-UST II, LLC, <br>     Plaintiffs, <br><br> v. <br><br> JASPER FUELS, INC., <br> RALLY MOTOR SPORTS, INC. and <br> BRUCE HOFFNER, <br>     Defendants. | CIVIL ACTION <br> No. 13-40129-TSH |

### ORDER ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (Docket No. 3)
**November 25, 2013**

**HILLMAN, D.J.**

### Background

Lehigh Gas Corporation, Lehigh Gas-Ohio, LLC ("Lehigh Ohio") and MALG-UST II, LLC (collectively, "Lehigh") have filed a Complaint (Docket No. 1) against Jasper Fuels, Inc. ("Jasper"), Rally Motor Sports, Inc. ("Rally") and Bruce Hoffner ("Hoffner") for breach of contract (Counts I-V), trespass (Count VI), conversion (Count VII), eviction (Count X) and breach of an individual guaranty (Count XI). Lehigh has also asserted claims for declaratory (Count VIII) and injunctive (Count IX) relief. This Order addresses Plaintiffs' request for permanent and/or temporary injunctive relief.

**Facts**

Lehigh sells automotive gasoline and other related products in Massachusetts and other states. Getty Properties Corporation ("Getty"), through one of its affiliates, owns property at 1264 Grafton Street in Worcester, Massachusetts (the "Premises"). For a period of time prior to April 30, 2012, Getty leased the Premises to Getty Petroleum Marketing, Inc. ("GPMI") pursuant to a Master Lease Agreement. On or about January 1, 2004, GPMI subleased the Premises to Suleyman Corp. ("Suleyman") for use as a retail services station. That relationship was eventually terminated and on April 2, 2009, GPMI subleased the Premises to Green Valley Oil, LLC ("Green Valley"). On or about November 1, 2009, Green Valley subleased the Premises to Suleyman. All of these various relationships were memorialized in written agreements. On or about November 11, 2011, Suleyman assigned to Jasper all of its rights and obligations under its agreements with Green Valley. On or about December 5, 2011, GPMI filed for bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). On April 2, 2012, the Bankruptcy Court issued an Order rejecting the master agreement between Getty and GPMI, which, as a matter of law, as of April 30, 3012, terminated GPMI's agreement with Green Valley and Green Valley's subsequent sublease with Suleyman. *A fortiori*, any interest Jasper had in the Premises pursuant to its assignment from Suleyman was terminated.

On April 19, 2012, Getty offered Jasper a limited revocable license agreement ("Revocable License Agreement") to possess and occupy the Premises for a monthly licensing fee subject to specified terms and conditions. Getty was continuing to seek a new tenant and distributor for the Premises. The Revocable License Agreement provided that Jasper could remain on the Premises in exchange for a monthly license fee equal to approximately the monthly rent that Jasper had been paying under its sublease-- $1,837.26 per month. Jasper was

informed that Getty expected to enter into a new lease for the Premises by April 30, 2012 and that Jasper could discuss a new subleasing agreement with the new tenant. However, the decision as to whether to grant a new sublease to Jasper was within the sole discretion of the new tenant. The Revocable License Agreement expressly stated that the temporary license being given to Jasper did not vest any legal title to the Premises in Jasper, nor did it create a tenancy or grant Jasper any other possessory interest in the Premises.

Pursuant to the Revocable License Agreement: Lehigh was to supply all motor fuels to be sold at the Premises; all motor fuel delivered to the Premises would be and remain the property of Lehigh until sold to retail customers; and all proceeds of fuel sales would be the property of Lehigh and would be held in trust by Jasper for the benefit of Lehigh. The Revocable License Agreement provided that Jasper would be in breach thereof and would immediately vacate the Premises if it did not pay the monthly licensing fee when due, or if it otherwise defaulted in the performance of the terms and/or conditions of the agreement. Additionally, the Revocable License Agreement incorporated certain terms of the sublease agreement that Jasper had entered into with Green Valley, including, but not limited to the following:

> Jasper would maintain the Premises in good, safe and operating condition, and that if it failed to do so, the landlord could enter thereon and take such remedial action as is necessary. Jasper also agreed to peaceably quit and surrender the Premises on at the expiration or termination of the lease agreement. The landlord had the right to terminate the lease upon two days written notice if Jasper breached its obligations. Upon termination of the agreement as the result of a default by Jasper, it would be liable for rent (including future rent which would be accelerated), expenses incurred by the landlord in putting the Premises and gas station in working order and in re-renting the same, and reasonable attorney's fees and expenses incurred by the landlord relating to a breach by Jasper.

Hoffner personally guaranteed Jasper's obligations under the sublease agreements.

Getty's rights and obligations under the Revocable License Agreement were ultimately assigned to Lehigh Ohio. Lehigh agreed to extend its obligation to honor the supply terms

contained in Jasper's sublease agreement with Green Valley until October 31, 2012. At some point, Getty entered into an agreement with Lehigh Case Wholesale Services, Inc. ("Lehigh Gas") to occupy the Premises; on October 28, 2012, Lehigh Gas assigned it rights and obligations to Lehigh Ohio, effective October 30, 2012.

On June 3, 2013, Lehigh offered to enter into a franchise agreement with Jasper; Jasper declined.  On June 5 and June 9, 2013, Jasper failed to pay amounts due Lehigh for petroleum products delivered to the Premises.  On June 12, 2013, Lehigh stopped delivering gas to Jasper.  Thereafter, Hoffner positioned parked cars or instructed that parked cars be put on the Premises in such a way as to block petroleum product delivery trucks' access to the Premises.  Rally, which Plaintiffs believe is owned by Hoffner, operates a used car business adjacent to the Premises.  Plaintiffs believe that the cars blocking access to the Premises are owned by Hoffner and/or Rally.  Defendants continue to block access to the tanks.  Consequently, Lehigh cannot access the tanks to remove product therefrom as required by Massachusetts Board of Fire Prevention Regulations. *See* 527 CMR 9.07(J)(3)(requiring that all underground storage tanks temporarily taken out of service be pumped out and rendered inert).

On June 24, 2013, a representative of Lehigh, Joel Despres, Territory Manager, visited the Premises to talk with Jasper about it failure to pay sums due.  Despres observed Jasper selling product for cash only; selling product for cash only violates the terms and conditions of the Revocable License Agreement, which required acceptance of cash and credit card payments.  Because Jasper was only accepting cash payments and failed to pay sums due Lehigh, Lehigh locked the underground storage tank fill caps and turned off the dispensers.  On July 17, 2013, Lehigh notified Jasper by certified mail that due to its failure to sign the franchise agreement, it was terminating the Revocable License Agreement.  Jasper was instructed to surrender the

premises and personal property on August 17, 2013.  On July 24, 2013, Hoffner was advised that his blocking of the pumps prevented Lehigh from complying with Massachusetts law, which required that the underground storage tanks be drained if temporarily taken out of service. Hoffner was again advised of this fact on August 27, 2013.  On September 30, 2013, Lehigh notified Jasper and Hoffner that Jasper was in default under the Revocable License Agreement and demanded that they immediately pay $15,412.90.  To date, Jasper and Hoffner have refused to vacate the Premises and refused to remove cars which are blocking tank transfer access[1].

The Complaint and motion for injunctive relief were filed electronically on November 11, 2013.  All Defendants were served a copy of the Complaint on November 18, 2013. On November 14, 2013, the Court issued an electronic notice setting November 25, 2013 as the hearing date for Plaintiffs' request for injunctive relief.  At that hearing, Lehigh stated that it had been in touch with Hoffner, who is purported to own Jasper and Rally, and he was aware of hearing.  The Court delayed the start of the hearing to give the Defendants an opportunity to appear.  Neither Defendants nor their counsel appeared at the hearing.  However, well after the hearing had concluded, Hoffner appeared at the Clerk's Office; he stated that he had inadvertently gone to the State courthouse.  Under the circumstances, although Lehigh has likely met the requirements for obtaining a preliminary injunction[2], the Court will instead enter a

---

[1] Lehigh also alleges that the Defendants have failed to pay monies owed.  However, the issue of whether any or all of the Defendants are liable to Lehigh for money damages is not the subject of this proceeding.

[2] Pursuant to this Court's rules, a preliminary injunction may issue only on notice to the adverse party. Fed.R.Civ.P. 65(a)(1).  A temporary restraining order may issue without notice only if specific facts in a verified complaint or in an affidavit filed with the court show that immediate and irreparable injury, loss or damage will result to movant before the adverse party can be heard in opposition and the movant's attorney certifies in writing any efforts made to give notice and reasons why it should not be required. Fed.R.Civ.P. 65(b).  In this case, it appears that the Defendants had notice, *albeit*, short notice.

Temporary Restraining Order and set a date for final injunctive relief at which the Defendants will have an opportunity to appear and be represented by counsel.[3]

### Discussion

In evaluating a motion for a temporary restraining order, the Court examines the same four factors that apply to a motion for a preliminary injunction, that is, the likelihood the movant will succeed on the merits, that the movant is likely to suffer irreparable harm in the absence preliminary relief, that the balance of equities tips in the movant's favor, and that an injunction is in the public interest. *Voice Of The Arab World, Inc. v. MDTV Medical News Now*, *Inc.*, 645 F.3d 26, 32 (1st Cir. 2011).   While all four factors must be weighed, the moving party's likelihood of success on the merits is "the touchstone of the preliminary injunction inquiry." *Philip Morris, Inc. v. Harshbarger*, 159 F.3d 670, 674 (1st Cir.1998). "[I]f the moving party *cannot* demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Maine Educ. Ass'n*, 695 F.3d at 152 (quoting *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir.2002)) (emphasis added).   The moving party bears the burden of proof for each of these four factors. *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003).

In order to satisfy the first factor, *i.e.,* a likelihood of success on the merits, Lehigh must establish that it is likely to prevail on its underlying claims for breach of contract and/or conversion against Jasper.  In support of its request, Lehigh has filed copies of the relevant legal agreements between the parties and the affidavit of Joel Despres, Territory Manager of Lehigh Gas-Ohio, LLC . *See* Docket No. 3.  While the Court intends to set up a further hearing to flesh out certain issues relevant to the request for a preliminary injunction, the Court finds that on the

---

[3]  Mr. Hoffner is advised that while he may represent himself, this Court's rules require that corporate entities be represented by counsel; that is they cannot be represented *pro se*, regardless of whether the individual seeking to represent the entity is an officer, shareholder or both. *See* LR, D.Mass., 83.5.2(d).

record before it, for purposes of its request for temporary relief, Lehigh has established a *strong* likelihood of success on the merits—that is, that Jasper has breached the parties' agreements, by failing to pay money due Lehigh and accepting only cash transactions for sales of product and therefore, Lehigh was within its rights to terminate the arrangement and order Jasper to immediately vacate the Premises. Lehigh has also established irreparable harm, that the equities are in its favor and that public policy favors the issuance of injunctive relief. Therefore, Plaintiffs' motion for a temporary restraining order is granted as follows:

> The Defendants, Jasper Fuels, Inc., Rally Motorsports, Inc., and Bruce Hoffner, shall take all steps necessary to grant Lehigh Gas Corporation, Lehigh Gas-Ohio, LLC and MALG UST II, LLC immediate and exclusive possession of the Premises; and

> The Defendants, Jasper Fuels, Inc., Rally Motorsports, Inc., and Bruce Hoffner, their officers, agents, servants, employees, attorneys and/or any other persons in active concert or participation with them, are hereby enjoined from blocking the access of Lehigh Gas Corporation, Lehigh Gas-Ohio, LLC and MALG UST II, LLC to the Premises, including any underground storage tanks thereon and, shall immediately move any cars, other motor vehicles, or other objects or things currently blocking access to the Premises.

## **Security**

This Court's rules of procedure provide in relevant part that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). Therefore, Plaintiffs

shall post a bond in the amount of $5,000 as security for the costs and damages, if any, sustained by any Defendant if found to have been wrongfully enjoined or restrained.

## Conclusion

Plaintiffs' motion for a Temporary Restraining Order (*see* Docket No. 3) is **_granted_**, as provided in this Order. The Court will hold a further hearing on Plaintiffs' motion for a preliminary injunction on December 9, 2013 at 3:30 p.m., in Courtroom Two, United States District Court, 595 Main Street, Worcester, Massachusetts 01608. The parties should be prepared to present witnesses relevant to all four preliminary injunction factors

This Temporary Restraining Order, as set forth above, will remain in effect through the Court's ruling on Plaintiffs' motion for a preliminary injunction.

**SO ORDERED**

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE

**Monday, November 25, 2013  5:00 p.m.**